Is that pronounced right? Exactly correct, your honor. Thank you. May it please the court, Jenny Leiston on behalf of the appellant Geoffrey Gattis. Your honors, the 6th circuit in United States v. Yates got it right. Generic robbery requires something more than de minimis force. And because North Carolina common law robbery, which this court has recognized. I think you haven't used de minimis force. That's not part of the calculus. We use that phrase in a dictum in Gardner, but it's not even part of the issue. The question is common law robbery has its elements. And we just discussed it in the last case. And if you look at Le Fay, it seems to me a agreed upon definition of using force or threatening force in the person. Taking the property or threatening force in the person. I think that's true, your honor. In Yates, the 6th circuit looked at this and said that pretty much, and agreed with all the circuits, that it's that misappropriation of property under circumstances presenting an immediate danger to the person. And the court in Yates talked about how the fact that that danger element is what elevates robbery over lesser theft offenses. Danger to the person. Danger to the person, exactly. And it really makes robbery an especially serious offense, a violent offense that is worthy of the type of severe sentencing enhancements that 4B1.2 provides in the career offender context. And so, the question then becomes, what is the amount of force that is required? What do most states require? Not amount of force. Nobody talks about amount of force. The North Carolina cases are very enlightening on this. They have two cases that talk about personality. It's Robertson and Chance. And those two cases, if you just grab a purse from somebody without touching the person, then it is larceny from the person. If you have to use some force, you struggle to pull it away with them, the cigarette box, you have to push the hand, it's force against the person, and it's robbery. And we think, actually, State v. Chance, your honor, does show that North Carolina has extended this idea of purse snatching to beyond what generic robbery comprehends. ...push the box. They've made that clear. In other words, the clear purse snatch is not as larceny as Robertson v. Chance. It's larceny from the person. In that case, in the cigarette case, they push the hand away at the box. Well, they grab the box and simultaneously push the hand off the box and run out the door. You're honest. I think that that is indistinguishable from the majority rule of where purse snatching does not qualify. And that can be seen by the... Well, purse snatching doesn't happen. Purse snatching, for instance, my hypothetical last case, a clear case of purse snatching, would have been sitting next to you, and you're reading the paper, and somebody snatches it. There's perhaps larceny. And they take it off your shoulder and don't touch you. Just grab it and run. You weren't even put in fear or anything. You were just...it wasn't force against you. But if they struggle with you, if you try to hold it or in the cigarette box and push the hand, it now becomes robbery. So I think that's where I disagree with you, Your Honor, on the pushing of the hand represents a struggle. I don't think that that is any additional force. And I think it is indistinguishable... It was the only force against the person, and that's what the court relied on. I think it is indistinguishable from the case of Lear v. State, which is the Arizona case that LaFave relies upon that says it's the majority rule that says that the mere snatching is not sufficient. And in that case, the defendant walked into the store. The store clerk was behind the counter, had the bag of silver. The defendant walked up and snatched the bag of silver out of the store clerk's hand and ran out the door. I think that is indistinguishable from chance. It's not indistinguishable. That is like purse snatching. That's larceny from the person. If you do something to the person, you push his arm, you spread his arm, hold his arm, struggle. He holds the bag and struggles. That becomes...LaFave makes that clear. And again, Your Honor, I would simply say that chance doesn't involve a struggle, and therefore, North Carolina courts have applied this beyond the generic... And I suppose we're disagreeing, Your Honor, on this idea of force and what that encompasses. The Sixth Circuit in Yates looked to this. The Ohio statutory robbery... Instructive force denotes placing the victim in fear. Here, the defendant used neither action nor instructive force to gain possession of Ms. Dover's purse. That was purse snatching. And then they go to chance and that's all it was. When you go to chance, the court relied on the fact that the robber pushed the hand off the box in order to snatch the box. And the Sixth Circuit looked at several Ohio cases in which they're virtually identical to chance, where again, it was pulling...they were talking about pulling a purse off the shoulder and jerking her arm back. They said that was insufficient to be robbery. I think that those are all more in line. I agree with you that the North Carolina courts pay a lot of lip service to this idea that purse snatching doesn't qualify. But I think when you see...and I guess I simply...I guess we just disagree about chance. In chance, they talked about...a woman says, she says, they grabbed a box of cigarettes when my hand was on there and pushed them out of the way, I guess to get my hands loose on the box. And then the court explains that's what made that robbery and not purse snatching, including robberies. And Your Honor, I suppose we simply disagree that I would contend that that was more in line... that that is more in line with larceny. What the generic definition of larceny from the person would encompass. And I think when you look at most robbery offenses, they do involve violent force. And I think that is the generic contemporary definition or at least something more than de minimis force. I don't know how you can say you disagree if the words say it. By pushing Ms. Wheaton's hands off the box, the defendant prevented her from resisting. When the court, knowing evidence is considered in the light most favorable to the state, the state has given every considerable interest to be drawn there from. It shows the defendant used the requisite force when he took the box and the evidence is thus sufficient to support a conviction of common law robbery. And we would simply contend that that is insufficient force to distinguish from larceny from the person. And Your Honor, when we look at all the...I think when... I think it's important to look at all the recent robbery cases that have come out of this court that show that most robbery convictions do have force as a violent force as an element. And we simply contrast that with North Carolina common law robbery. North Carolina does have a statutory robbery that fits in very well with this idea of danger to the person because it includes as an element the fact that you have to put the person in danger. And we think that because that North Carolina is making that distinction, it does have a generic robbery definition. But it has extended common law robbery overly broadly to encompass offenses that we consider would be generic federal larceny from the person. Your Honors, I would like to spend a little bit of time on the third issue as well. That is the four-point enhancement that Mr. Gaddis received for possessing a firearm in connection with another felony offense. We contend that the district court there legally erred in her interpretation of Application Note 14B of the Sentencing Guidelines, which says that a defendant who finds and takes a firearm during a burglary does in fact possess a firearm in connection with another felony offense. And here we believe two things. There was one, to connect Mr. Gaddis to actual participation in that break-in. But two, the district court here erred in her interpretation of the Application Note because she said that Mr. Gaddis could be considered in connection with this felony offense, with the breaking and entering, and that that would apply even if Mr. Gaddis simply somehow supported the burglary in some unspecified manner and in return for his support received the benefits of the burglary, some of the proceeds. And we believe that that is unwarranted expansion of Application Note 14B because keep in mind Mr. Gaddis already received a two-point enhancement for possession of a stolen firearm. So the guidelines already contemplate possession of stolen property. If the district court's interpretation of Application Note 14B were correct, everyone who was in possession of a stolen firearm and got that two-point enhancement would also get the four-point enhancement for in connection with it. He had a series of break-ins that were all linked and the pre-sentence report refers to them. Basically, it was a conspiracy to carry on a course of conduct. I don't believe so, Your Honor. I don't believe so, Your Honor. I don't think there is sufficient evidence to show that Mr. Gaddis actually participated in that burglary in any way. You didn't object? Well, Your Honor, it was interesting. The district court actually said over and over again that the pre-sentence report was extremely vague in many respects and it didn't really specify how Mr. Gaddis, when Mr. Gaddis was found in possession of a stolen firearm, it didn't say that Mr. Gaddis actually participated in the break-in and entering. And even the probation officer at the sentencing said, Your Honor, I think you have to find that he is connected to that break-in and entering in order to apply that four-point enhancement. So we do believe that the district court, and again, the application note has to be read according to its plain language, and the plain language of the application note says, the defendant finds and takes. The district, the pre-sentence report says he was involved in five additional break-ins and you assign the guns to him and they say on July 19, Gaddis provided verbal statement accepting responsibility for his actions. In this case, Your Honor. This is the pre-sentence report here. He accepted responsibility for his actions for this case. For the possession of the firearm that he was found in possession of. Yes, I don't think the evidence ever showed that Mr. Gaddis was the one who stole these items during the break-in. We believe the evidence was insufficient and we believe the district court inappropriately applied that four-point enhancement by extending this idea that a defendant who was found in possession of stolen property is automatically gets that four-point enhancement for the break-in. It just has to be more likely than not. Correct, Your Honor. It has to be more likely than not. Evidence is pretty strong that he was engaged in a series of break-ins. He had the iPad, the purple iPad. He had other evidence that they recovered. He had various guns and clips all identified in various places. One of them was the very next day afterwards and he and Williams were driving together in a vehicle and they he was definitely found in possession of one of the firearms. The iPad and the other personal property that was stolen from these places that he had stored there in the yard. I mean, it would take I think that you would have to look the other way not to conclude that he wasn't involved. So, Your Honors, I disagree. I don't think that that actually did the break-in entering and participated. As defense counsel argued below, it could have easily been just as easily been the case that he was he simply was in possession of these stolen firearms. However, he could have gotten those through other means. Through his connection with Mr. Williams. Well, so the personal property So, Your Honors, the personal property was found in a residence that Mr. Gaddis sometimes stayed in. I don't think the evidence was sufficient to show that he was in constructive possession   Mr. Gaddis was in possession of those items. I see from Your Honors point He's out in the backyard shooting with these guns and they have that debris out there that consisted of stolen stuff, stuff in the house that matches is clear from each one of them. It's insufficient to show that he found and took a firearm during the course of a burglary and that he actually participated in that burglary. That he has to be the one to do that. Not simply I don't think the evidence was sufficient to show that. And I would also just go to the district court's interpretation of application 14b because she specifically said he either participated in it or he supported it in some way. And we think that supporting it in some way doesn't meet the application note 14b. So the two point enhancement was for possession of more than three firearms. And we contend that there was insufficient evidence to show even under the preponderance standard, which of course is higher than the probable cause standard, to show that he possessed those firearms that were stored in this place where he sometimes stayed. Not even in any sort of building whatsoever, but only in sort of beneath the building and out in the woods. We think that and obviously he did not have exclusive possession over that area. Let me just give you something. You know how we've overlooked this and there's other evidence to support this, but it says Gaddis is accountable for possessing ammunition and seven firearms, at least five of which were stolen by Gaddis during residential break-ins. Now, those are the facts that were not objected to before the district court. Doesn't that support it? So certainly council below certainly objected to those enhancements and the district court said several times... Did he object to those facts? He did not object to that finding. However, it's unclear that the district court actually relied on that finding because she complained consistently through the hearing that the PSR was extremely vague on so many points... That's not very vague. When the agent McLooney got up to testify, the district they sort of went through this whole thing trying to nail down how it was, what the evidence actually did show, and the district court said, well, this PSR is so vague on so many points, I'm going to rely on the agent's testimony. Well, does the fact that his lawyer objected to the enhancement suffice to include an objection or implicitly include an objection to the facts? In this case, I think it would, Your Honor, because obviously if defense counsel below agreed or found no problem with that one sentence in the PSR stolen by Gaddis, then I think he would have been... I thought she had to give the judge a chance to get it right. And I think what they did was he was making very specific objections to those enhancements and said there was not evidence to support these sort of conclusory statements that are made in the PSR. And I would say that that is a very conclusory statement that the PSR makes that they ended up... which the evidence simply did not support. Where did they find... What did they find? One firearm on him in the vehicle? On him in the vehicle, yes. And then they found... None, Your Honor. Where were the others? The guns were found outside in the backyard under an outbuilding. And how many were found there? Three, Your Honor. So those would satisfy, wouldn't they? If they were attributable to him. If they were attributable to him, yes, that would satisfy the enhancements. And there was a report that they were out there, Williams and Gaddis were out there shooting those guns back there the day after they were stolen? Miss Watson made the report that they were... that she heard Mr. Gaddis and Mr. Williams shooting guns, yes, but she didn't know which ones they were. Thank you, Your Honor. Good morning. May it please the Court. North Carolina is an exceptional state in many ways, but its robbery crime is not among them. As the Court has discussed this morning in this case and the last one, there is a general consensus among the states, a clear majority, that the force necessary to commit a robbery is simply that which overcomes the victim's resistance. That can be shown in the LaFave Treatise and it can be shown in countless states, some of them even on the face of their statutes, but certainly in their case law. North Carolina draws the same line because it gets its law from the same place. They all come from the Blackstone common law robbery definition that is ancient. And North Carolina hasn't deviated from that. Judge Niemar, you mentioned the comparison of Robertson and Chance, and I agree completely with that discussion. Well, of course, explain the law. North Carolina is not off base, it seems to me. It's LaFave that goes into this too. And Supreme Court has relied on LaFave a lot to describe the common law. I think LaFave is the favored treatise on the history and the present of this area. And I would add one more North Carolina case, we mentioned this in the 28 jail letter that we filed, and that's the Harris case. They're trying to deal with, so we know a purse snatching is not enough alone. We know that if it involves some degree of resistance in fighting than it is, what about snatching a necklace and breaking it off someone's neck? And the North Carolina Court of Appeals said, this we haven't had opportunity to answer before. The fact that you even have to answer that question disproves the notion that any kind of purse snatching is an easy question, if that were true. Instead, they said, we don't know, we'll have to look. And where did they look? They looked to other states' robbery offenses, because North Carolina's crime is unexceptional. They looked to Rhode Island and Georgia and Illinois and Maryland, and they concluded, just like all these other states, that yes, if you snatch a necklace and it has to break off the person and create their awareness. I thought it was interesting that they pointed out pulling a chain off a person's neck is robbery because it causes a higher risk of bodily injury than a LaFave's description of robbery as being an aggravated larceny under circumstances involving danger to the person. The danger to the person is this overcoming resistance that creates the chance for a conflict. The other point... Is the crime of robbery in North Carolina, is it categorical? Do we analyze it categorically or under the modified category? In Gardner, the court ruled that it's not divisible on the basis of its violence or fear elements. We argued that it would be divisible on that basis, but the court rejected that argument. So I think it would be under the categorical approach. So the analysis would be whether... Then we would look at the generic definition. That's right, Your Honor. But North Carolina doesn't have the first snatching statute. They use the common law. It actually does, Your Honor. Larceny from the person. Larceny from the person is a grade H felony. And common law robbery is a grade G. And larceny from the person is a lesser included offense. And that's actually a really important point in this case. Because if you accept Ms. Lyson's argument, that would merge larceny from the person with common law robbery. And larceny from the person for a first-time offender, the minimum sentence is half of what common law is. I can't think of exactly the name of the citation, but North Carolina has used common law robbery to prosecute purse snatching. When that purse snatching either involves force, such that you overcome the victim's resistance, or when it puts the victim in fear. And that is consistent with other states as well. That's when a purse snatching, or even a pickpocketing... So if I pick your pocket on the street in North Carolina, that's larceny from the person. If you catch me and you grab my hand and I pull it and run, even though that's not a lot of force, that will be enough to elevate it to robbery. In a Harris case, the North Carolina Court of Appeals, one of the cases they relied a lot on was a different Robertson case from Rhode Island. And the court even highlights that this may seem like a narrow distinction, but the issue is once you have this conflict, once you have this overcoming resistance, that is when you have this increased danger that is the hallmark. That is the thing that robbery was designed to go after compared to larceny. And North Carolina has been very clear. In fact, if you look at the jury instructions for larceny from the person and robbery, they're the same. Except robbery has one additional element by violence or fear. If we say that that is simply any de minimis touching satisfies that. Of course, a pickpocketing is a de minimis touching. I don't know why you use the word de minimis. I'm not. It's not in any calculus. It's not in any case. It's referred to in this victim and gardener as an incidental comment, but it's not part of the common law definition. It's not part of a fade. It's not part of robbery that has been defined the same in North Carolina as in all the other states. Four circuits have concluded robbery, common law robbery, as inherent to robbery. Misappropriation of property in circumstances involving immediate danger to the person. Taking from the person their personal presence. And they all buy into that. And that's North Carolina's definition. I agree completely. And I don't mean to suggest that I'm embracing the de minimis term. I think it's the wrong term. It's a sloppy definition to start talking about. That's right. A lot of force during screen violence because Supreme Court described violence under ACCA, which is a totally different problem. That's right. And that goes back to North Carolina being simply unexceptional. That it divides this line. And I have a whole pile of state cases that I won't run through because I think the court understands our argument. But when we went looking to find this line in other states, it was easy. It was easy to find literally dozens of states. That's right. Well, certainly this court in Winston characterized Virginia's robbery crime the same way. If you look in Maryland you'll find the same discussion about degree of forces and material so long as it overcomes resistance. So it's the majority rule in the states in this circuit as well. The other point that I would make very briefly is that the Sentencing Commission, they have a force clause. And they know they have that. And they also enumerate these offenses. And that sends a signal that the Sentencing Commission wants these crimes to count whether or not they satisfy the force clause. And that's why I think looking at the degree of force is not what the states have done with the robbery crimes. It's are you overcoming the victim's resistance. North Carolina is unexceptional in that way. And we think therefore it satisfies the generic definition of robbery that is consistent across six circuits. The last thing I'll say on that point, unless the Court has questions, is the Yates decision that my colleague has relied on quite a bit. Yates is actually very simply distinguishable. It's one of the very last paragraphs. They're talking about Professor LaFave summarized this body of law by noting the great weight of authority supports the view that there's not sufficient force to constitute robbery when a thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking. I think that's what we've been talking about. Yet as discussed above, Ohio case law establishes that a conviction under their statute can result from that. That's Ohio. North Carolina doesn't allow that. North Carolina does not allow a mere purse snatching. And so the six circuits decision in Yates is simply not applicable here. They weren't looking at North Carolina's robbery offense. I would turn to the other issues in the case. Unless the Court has any questions about robbery, I'd be happy to discuss them. Looking at the other, there's just two brief points. One legal and then one factual. The second and third issues are very much related. The first is the legal issue. Relevant conduct principles apply here. The 2K2.1b6b enhancement for using or possessing a firearm in connection with another felony, it actually says in connection with another felony offense. And the guidelines are very clear. That's a special term of art that I know when I first became a prosecutor I had to learn that that term is unusual. Because the commission has defined that to include relevant conduct. And relevant conduct in turn in 1B1.3 includes all acts and omissions aided and abetted by the defendant and reasonably foreseeable acts and furtherance by a co-conspirator. So we would disagree with the defendant on the idea that we needed to show the defendant himself personally himself took a gun during a burglary. It's enough if he aided and abetted or conspired to commit the burglary which was relevant conduct. And that is what the 8th Circuit said in Vega. It's what the 11th Circuit said in an unpublished case in Rice. And we think that was shown here. And that would be the correct legal standard. That's what the district court applied. The factual points, I think there's just too much. The materials that were stolen in these burglaries that were all found on the property, it's just too much for this to be some kind of he's the most unlucky defendant in the world. And so all the events in this case happen in a one week time frame. You have January 7th is the burglary where the guns were stolen. There's a lot of stuff stolen in that. An Armalite AR-15, Smith & Wesson assault rifle, two Glocks, a shotgun, 30 Tapco magazines, and a Marlin hunting rifle. And then the next day Mrs. Watson observes the defendant and Williams shooting from her yard in what she describes as automatic gunfire. Then she doesn't report that for three days. January 11th she reports it. January 12th the defendant's caught with one of the stolen guns. January 13th they find all of this. They don't find the assault rifles. And they don't find one of the shotguns. But they do find a Marlin 22 semi-automatic rifle. They do find the Tapco magazines. They find a Kindle Fire tablet with a purple cover, which I think is pretty distinctive. There's also another burglary from November 2015 where a lot of very distinctive items were stolen. A sterling silver tennis bracelet with white diamonds, that was found. My favorite item is an ocean spray bottle with 50 cent coins in it. That was found. That is not the kind of thing you buy off of somebody that they stole in a burglary. That's an item that you've put there because you stole it in a burglary. So a preponderance of the evidence demonstrated that the defendant was not just tangentially involved but centrally involved in these burglaries with Williams. And at the very least I don't think on this record it can be said that there's a definite and firm conviction that Judge Flanagan was wrong to think that a preponderance of the evidence supported it. Now let me go back to the robbery. Yes, sir. The site, 709 Southeast 2nd, 602 North Carolina Court of Appeals in 2011 upheld a conviction under a common law robbery statute where there was purse snatching without force. I'm not sure. What was the name of that case, Your Honor? Smith v. North Carolina. I have two Smith cases in front of me. I'm not sure if it's the same one. But as I understood that case, if it's the one I believe it was cited in a string cite in the defendant's reply brief, if it is the one that I'm thinking of it was, first of all, it was a motion to dismiss. And it was deciding whether the district court, taking all inferences in favor of the government, whether the lower court had erred in thinking that a jury could conclude there was a conviction of force. That would be my first point. My second is that it was an unpublished case. Not that that means it's not worth talking about or considering, but Robertson and Harris, the cases we've been talking about, are published cases of the North Carolina Court of Appeals. Is there evidence between published and unpublished North Carolina Court of Appeals as far as we're concerned? It's very similar to here. They are, but they are not binding on future panels, just like here. It would be just like if I had an unpublished decision of this conflict between them, the published decision would clearly control, because it is the authoritative law. I may misunderstand. The North Carolina Rules of Appellate Procedure state that those are non-presidential decisions. The North Carolina Rules of Appellate Procedure state that those are non-presidential decisions. And I haven't looked at that for a while, but I looked at that for another case on this issue. And they say that basically it looks the same as the Federal Rules of Appellate Procedure about unpublished cases. And I'm not trying to suggest therefore we should just ignore it. Chance is an unpublished decision. Eldridge is an unpublished decision. The two that Gardner relied on. But North Carolina's courts I think have been very clear about this. That a mere purse snatching is not enough. That's Robertson. That is a published case. Harris then relies on Robertson. This is in 2007. It's not that long ago. Makes the exact same point. And has to address this very nuanced issue about whether snatching a necklace is enough. If a mere purse snatching is enough, why even spend any time on that? That issue is settled by case law if a purse snatching is enough. Of course snatching a necklace off of someone would be. Instead they said this is not a settled issue of law and we have to analyze it. And then it goes all the way back. They're citing the case law going all the way back to 1857 talking about, and this is from the North Carolina Supreme Court, the force used must be of such a nature as to show that it was intended to overpower the party robbed or prevent his resisting and not merely to get possession of the property stolen. The North Carolina Supreme Court's interpretation of its offense is the binding interpretation in federal court. And they have said that you can't just use enough force to take the property. That's not enough. And that's a really unremarkable statement because it's exactly what other states have said as well. So as to the Smith case, Your Honor, to the extent that it could even be read to show less force than we're talking about in these other cases, these other cases would be the controlling law. I'd be happy to address any other questions the Court may have. Thank you. Just briefly, Your Honor. Judge Keene, to your point about the published versus unpublished opinions, what Mr. Gaddis has to show only is that there is a reasonable probability that North Carolina would apply the common law, this definition to conduct that scope of the generic definition of generic robbery. And so I think whether or not it's published or unpublished, the Smith case, for example, does show that there is a reasonable probability that North Carolina will extend the definition of common law robbery that someone in North Carolina can be convicted for a purse snatching offense, which is conduct that falls outside the scope of the generic definition of robbery. And so particularly when you have unpublished cases, or the difference between the unpublished and the published doesn't make a difference in terms of the reasonable probability test, because you often have the case, of course, with appellate decisions, the cases that come up on appeal really represent only the tip of the iceberg in terms of all the thousands of cases that are being decided in the Superior Courts. And the Superior Courts of North Carolina look to both the unpublished and the published decisions of North Carolina Court of Appeals for guidance. And so I think there is a reasonable probability that North Carolina... So most of the North Carolina criminal law in this area come from the Court of Appeals? I beg your pardon, sir? Most of the North Carolina criminal law come from the Court of Appeals as well as the Supreme Court? Absolutely, Your Honor, by a large quantity, yes. So that is all I said. Yes. And the Supreme Court, it's like the U.S. Supreme Court. It's discretionary review, unless there is a dissent below, and then the Supreme Court does have to take that up if they are petitioned for the review. That's right. Yes, most of the bulk of the cases are decided at the North Carolina Court of Appeals. So I just wanted to point that out that I do think there is a reasonable probability that North Carolina applies the common law robbery, that people in North Carolina can be convicted for a mere personal action offense. You know, even... I'm looking here at a clip from North Carolina Smith. They even quote the generic definition. They say, it's a felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear, which is the generic definition. But then we have to look to how the courts apply that definition. And that's where we think it's... That's what they were applying. To a mere personal action offense. And you're honest, we would respectfully request that this Court vacate Mr. Gaddis' sentence and remand this case for re-sentencing. Thank you. We'll come down and recount and then proceed on to the final case. Thank you.
judges: Paul V. Niemeyer, Robert B. King, Henry F. Floyd